GORDON, APPELLANT, *v.* TREVARTHAN, RESPONDENT.

[Submitted February 20, 1893.  Decided October 3, 1893.]

JURORS—*Quotient verdict—New Trial.*—An agreement by a jury to return a "quotient verdict," whereby each member was to indicate the amount for which he thought the verdict should be, and the sum of such amounts divided by twelve should be the verdict, with an agreement to abide by such quotient, shown by the affidavits of jurymen who were induced to assent to a verdict so reached on account of such agreement, is a resort to the determination of chance, and within section 296, subdivision 2, of the Code of Civil Procedure, allowing a new trial for such misconduct on the part of the jury.

*Appeal from Second Judicial District, Silver Bow County.*

Defendant's motion for a new trial was granted by McHAT-TON, J.  Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff appeals from an order granting a new trial. The verdict and the judgment were in favor of the plaintiff for $167.63.  The defendant moved for a new trial upon one ground only, to wit: "Misconduct of the jury." (Code Civ. Proc., § 296, subd. 2.)  This section and subdivision are as follows: "The former verdict or other decision may be vacated, and a new trial granted on the application of the party aggrieved, for any of the following causes materially affecting the substantial rights of said party. . . . . Second, misconduct of the jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict, or to a finding on any question or questions submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavits of any one or more of the jurors."  In support of this motion the defendant filed an affidavit made by William J. McNamara and David Meiklejohn, two of the jurors, who deposed as follows: "That there was a disagreement among the members of the jury as to the verdict which should be rendered in said cause and a proposition was thereupon made and agreed upon by the members of the jury that each member should indicate the amount for which he thought the plaintiff should recover, if at all, and that the sums thus indicated should be added together, and the sum so found should thereupon be divided by twelve, and the

quotient thus found should be and constitute the amount in which plaintiff should recover; and said jurors agreed to abide by the result arrived at in this manner; that in this manner the agreement upon a verdict was reached, and the verdict of $176 ($167.63) arrived at. Affiants further state that they, and each of them, were induced to assent to said verdict on account of said proposition so made and carried out." The plaintiff, in opposing the motion, filed the affidavit of J. R. Silver, W. H. Young, Joel Crossman, and David Meiklejohn. These jurors, in their affidavit, present a somewhat different view of the conduct of the jury than that set out in the other affidavit. They say, in effect, that the jurors agreed that each one should set down an amount that he thought plaintiff should recover, and that the amount should be divided by 12; that each thereupon set down an amount, and that the total was divided by 12, and the quotient found to be $167.63; that, after this sum was found, the jurors discussed the matter as to whether that should be the amount of the verdict, and it was unanimously agreed that said sum should be the verdict, and it was thereupon inserted in the verdict, and the jurors were asked by one of their number if that should be their verdict, and they, or most of them, answered " Yes," and no objection was made by any juror. Thereupon the foreman signed the verdict, and it was returned into court. The motion for new trial was heard upon these affidavits, and by the court granted. The plaintiff appeals from this order.

*W. I. Lippincott,* for Appellant.

I.   Where the calculation of the jury in determining the amount of their verdict is purely informal, for the purpose of ascertaining the sense of the jury, and every juror feels at liberty to accept, reject, or qualify the result, according to his convictions, under such circumstances the jury may adopt, as their verdict, the exact quotient found, and it will be good. (*Grinnell* v. *Phillips,* 1 Mass. 530, 542; *Dana* v. *Tucker,* 4 Johns. 487; *Bennett* v. *Baker,* 1 Humph. 399; 34 Am. Dec. 655; *Harvey* v. *Jones,* 3 Humph. 157, 160; *Turner* v. *Tuolumne County Water Co.,* 25 Cal. 399; *Papineau* v. *Belgarde,* 81 Ill. 61; *Barton* v. *Holmes,* 16 Iowa, 252, 259; *Deppe* v. *Chicago*

*etc. R. R. Co.*, 38 Iowa, 592; *Kennedy* v. *Kennedy*, 18 N. J. L. 450; *Guard* v. *Risk*, 11 Ind. 156; *Dorr* v. *Fenno*, 12 Pick. 526; Thompson & Merriam on Juries, 508.)

II.   In order to vitiate the verdict there must be an agreement that the quotient must be taken as the verdict, and such agreement must be carried out. (Hayne's New Trial, p. 217, § 71; *Wilson* v. *Berryman*, 5 Cal. 44; 63 Am. Dec. 78; *Smith* v. *Cheetham*, 3 Caines, 61; *Thompson* v. *Commonwealth*, 8 Gratt. 656.)

III.   Where an agreement is reached through the "quotient process," without an agreement to be bound by the amount arrived at, and the amount is afterwards ratified by the consent of each juror, as the verdict, it is not "a resort to the determination of chance," within subdivision 2, section 296 of the Code of Civil Procedure. (Hayne's New Trial, p. 216, § 71.)

*Charles R. Leonard,* for Respondent.

The proceeding carried out by the jury in this case was a resort to the determination of chance. (*Goodman* v. *Cody*, 1 Wash. 329; 34 Am. Rep. 808; *Williams* v. *State*, 15 Lea, 129; 54 Am. Rep. 404.)

DE WITT, J.—The question upon this appeal is upon what the cases and books have called "quotient verdicts." See cases cited below and in the briefs of counsel. Verdicts arrived at by methods such as described in the McNamara affidavit in this case have been held bad when properly before courts on motion for new trial. But the facts vitiating such verdicts are the agreement by the jurors to go into the process of marking amounts, adding them, and dividing the same by 12, and the agreement that the result so obtained shall be the verdict, without further consideration; and the fact that such proceedings were taken by the jury in pursuance to such an agreement, and that the result so obtained was returned as the verdict. (Thompson & Merriam on Juries, § 408 et seq., and numerous cases cited; *Goodman* v. *Cody*, 1 Wash. (Ter.) 329, 34 Am. Rep. 815, note.)

On the other hand, it is held that a verdict reached after the quotient process having been had by the jury is not

vicious "where the calculation is purely informal, for the purpose of ascertaining the sense of the jury, and every juror feels at liberty to accept, reject, or qualify the result, according to his convictions. Under such circumstances the jury may adopt as their verdict the exact quotient found, and it will be good." (Thompson & Merriam on Juries, § 410, and cases cited and also cited in appellant's brief.) The distinction between good verdicts and bad verdicts where the quotient process has been used is well stated in a very old case, as follows: " If the jurors previously agree to a particular mode of arriving at a verdict, and to abide by the contingent result at all events, without reserving to themselves the liberty of dissenting, such a proceeding would be improper; but if the means is adopted merely for the sake of arriving at a reasonable measure of damages, without binding the jurors by the result, it is not an objection to the verdict." (*Dana* v. *Tucker*, 4 Johns. 487. See, also, Hayne's New Trial and Appeal, § 71.)

The question, then, in this case is, what was the nature of the resort to the quotient process by this jury? The affidavit of Meiklejohn and McNamara is clearly to the effect that the conduct of the jury was of the kind first above described—the kind which the cases hold vitiates the verdict. The affidavit of Young and others tends to present the conduct of the jury as innocent, and being simply informal, for the purpose of obtaining the sense of the jurors. Meiklejohn signed both affidavits, but McNamara stands upon his affidavit, and did not sign the Young affidavit. Our statute says that whenever any one of the jurors shall have been induced to assent to a verdict by a resort to the determination of chance, such misconduct may be proved by the affidavit of such juror. Such conduct is so defined by the statute to be misconduct. So it appears from McNamara's affidavit that at least one juror—that is, himself—was induced to assent to this verdict by reason of the quotient proceeding; so it would seem that this, under the statute, is enough to vitiate the verdict. The affidavit of Young and others is to some extent contradictory of the McNamara-Meiklejohn affidavit, but that contradiction was resolved by the district court in favor of the McNamara affidavit.

We are therefore of the opinion that the order should be affirmed if this quotient proceeding is to be considered as a "resort to the determination of chance"; for that is the language of subdivision 2, section 296, Code of Civil Procedure. This rule is that the affidavit of a juror may be taken to support his verdict, but not to attack it. (*Turner* v. *Tuolumne County Water Co.*, 25 Cal. 398; Thompson & Merriam on Juries, § 440, and cases cited; Hayne's New Trial & Appeal, §§ 73, 74.) Section 296, Code of Civil Procedure makes an exception to the rule, so that the affidavit of a juror may be taken to attack the verdict if the juror has assented to the verdict by reason of a resort to the determination of chance.

The California supreme court, under the same statute as we now have, held long ago that this quotient proceeding was not a resort to the determination of chance. That court said: "But, independent of authority, it is manifest that there is no element of chance in such a verdict. Each juror marks a sum, which, in his judgment, represents the true amount of damages. Neither of these sums is the result of chance; on the contrary, each is the result of the judgment or will of the juror by whom it was marked. Neither is the aggregate of these sums, nor a quotient resulting from a division of the aggregate by twelve, the result of chance, but, on the contrary, the result of the most accurate of the sciences. Thus, from the commencement to the end of the process, no quantity which enters into the final result is determined by a resort to chance." (*Turner* v. *Tuolumne County Water Co.*, 25 Cal. 403.) But this case has received by no means a cordial approval by text-writers and other courts. Thompson & Merriam on Juries refers to the case, and the language which we have just cited, and says: "This reasoning seems hardly conclusive. It proceeds upon the hypothesis that at the time the jurors consent to be bound by the result of the addition and division it is certain that each juror will mark down his estimate of the damages; hence this process of finding a verdict is as exact as the science of mathematics. But the contrary is the fact. The jurors consent that their verdict shall vary from abstract justice in that degree that each juror deviates from sound judgment. All the prejudices, whims, and caprices which sway a

juror in his deliberations are given full play, and they meas-
urably affect the final result.    Nothing could well be more the
sport of chance than a conclusion reached in this manner."
(Thompson & Merriam on Juries, § 415.  See, also, *Warner* v.
*Robinson*, 1 Root, 195; 1 Am. Dec. 38; *City of Pekin* v. *Win-
kel*, 77 Ill. 56, 58; *Parham* v. *Harney*, 6 Smedes & M. 55.)

The California case also receives a severe criticism in *Good-
man* v. *Cody*, 1 Wash. (Ter.) 329, 34 Am. Rep. 808.  We cite
from that case as follows:

"Among all the cases that have been cited in favor of and
against the verdict in the case at bar being considered one got
by chance determination we find none in which the meaning of
the word 'chance' is discussed, and all the cases, in this respect,
are unsatisfactory.    The word 'chance' has not been adopted
or defined as a law term, is not technical, and must be deemed
used by the legislature in a popular sense.    According to gen-
erally accepted and ordinary uses of the word, any thing is said
to have happened by chance to any one which was neither un-
derstandingly brought about by his act nor pre-estimated by
his understanding.    If any one move his arm inconsiderately,
and by the movement unintentionally break a crystal vase, we
say he did it by chance; for his intelligence did not, from step
to step, estimate or direct the action to its result.    Yet,
although the result was a chance one, it was the certain, inev-
itable result of assured relative positions of the arm and the
vase, and the muscular action, perhaps voluntary, of the former.
Again, when a die is thrown, the position in which the die
will fall is a necessary effect from well-known but unestimated
causes.    By the original position of the die, its size, form, and
weight, the manipulation given it, the distance and velocity of
the throw, the sort of surface it falls upon, and perhaps other
things, the final position of the die is determined with mathe-
matical certainty, and may, by any painstaking mathematician
possessed of the elements of the problem, by the use of 'the
most accurate of the sciences,' be calculated with infallible pre-
cision.    Still we may say, and properly say, that the final posi-
tion of the die is determined by chance; and by this we mean,
not that the result of the throw was uncertain, or a consequence
of unknown causes, but that it was produced by causes the effi-

cient and proportionate operation of which were in fact by the person to whom it chanced neither estimated nor intelligently controlled for the accomplishment of the result. With the same propriety we speak of meeting by chance a person at a certain place at a certain time; and this, no matter how exactly we have precalculated and intended being ourselves at that place at the particular time, nor how exactly that person may have precalculated and intended being himself at the same place at the same time likewise, provided we to whom the chance happens, did not precalculate nor consciously bring about the meeting then and there.

From the popular use of the word 'chance' as illustrated in these examples it seems plain to us that a juror resorts to the determination of chance for a verdict whenever he resorts to any method of determination the steps and results of which are beyond his calculation, and unfollowed and unparticipated in by his understanding; and all the jurors resort to such a method when they resort to the method of average. With a verdict got, fairly as between the jurors, by such a method, the conclusion attained by the intelligence of any one juror never coincides, unless the average of the conclusions of all the jurors happens to be identical with his own; whereas, in a good verdict, every element of chance is eliminated by the fact that before the verdict is complete every intelligence on the jury, being first well apprised of the action of every other, has, by its own individual, conscious action, ratified and arrived at the same conclusion with every other. In a verdict got by the method of average every sum that goes to develop the verdict is a chance sum as to each juror, save the sum that the juror himself sets down; and the verdict is not redeemed from being a chance verdict as to each juror, and therefore chance as to all, by the fact that each has contributed to it an element not of chance, any more than a dice throw would be redeemed from being chance by the fact that the throw was in part controlled by certain intentional motion of the dice-box." (See, also, the note to this case by the editor of the American Reports. See, also, *Williams* v. *State*, 15 Lea, 129; 54 Am. Rep. 404; *Parham* v. *Harney*, 6 Smedes & M. 55; *Wilson* v. *Berryman*, 5 Cal. 44; 63 Am. Dec. 78; *Flood* v. *McClure* (Idaho, Feb. 3, 1893), 32 Pac. Rep. 254.)

With due respect to the California court, from which this court for many years has drawn much that was useful and satisfactory, we cannot but hold that the cases which have repudiated *Turner* v. *Tuolumne County Water Co.*, 25 Cal. 397, state the better and more reasonable doctrine. Nothing occurs to us which would add force to the criticisms above cited of the California case. We therefore hold that such resort to the quotient process as is set forth in McNamara's affidavit is a resort to the determination of chance.

Since writing this opinion there have been published and come to our attention the cases of *Dixon* v. *Pluns*, 98 Cal. 384, 35 Am. St. Rep. 180, and *Weinburg* v. *Somps*, Cal., June 9, 1893 (not reported), in which the California supreme court desert the doctrine of *Turner* v. *Tuolumne County Water Co.*, 25 Cal. 397.

The order granting the new trial in this case is affirmed.

*Affirmed.*

HARWOOD, J., concurs.