GALVESTON, H. & S. A. RY. CO. v. BRASSELL et ux. (No. 5399.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 13, 1915. Rehearing Denied Feb. 24, 1915.)

1. HUSBAND AND WIFE �euro221—PERSONAL INJURIES TO WIFE—ACTIONS—PARTIES.

The wife is not a necessary party to an action by her husband for injuries to her person.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 707, 802–806, 968, 973, 976½; Dec. Dig. 🖙221.]

2. APPEAL AND ERROR 🖙187 — HARMLESS ERROR—MISJOINDER OF PARTIES.

Where defendant, in an action by a husband and wife for personal injuries to the wife, did not object to the improper joinder of the wife, and no injury resulted therefrom, he could not on appeal complain of the misjoinder.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1184–1189; Dec. Dig. 🖙 187.]

3. CARRIERS 🖙344—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

The burden of proving contributory negligence of a passenger, sustaining a personal injury while alighting, rests on the carrier, and never shifts to plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1399; Dec. Dig. 🖙344.]

4. TRIAL 🖙315 — MISCONDUCT OF JURY — QUOTIENT VERDICT.

A verdict, with a few dollars added to obtain a round sum, was the amount of a quotient verdict. Most of the jurors averred that they did not agree to abide by the result, but one juror, who favored a verdict for $2,000, agreed to the verdict for $6,000. Held, that the verdict was a quotient verdict and must be set aside.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 740–742; Dec. Dig. 🖙315.]

5. TRIAL 🖙306—MISCONDUCT OF JURORS.

Jurors who, during the deliberations of the jury, in an action for personal injury causing injury to the sciatic nerve, narrated their personal experience with sciatica, and one of them exposed his leg to show the effects of the disease thereon, were guilty of misconduct, necessitating the setting aside of the verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 731, 742; Dec. Dig. 🖙306.]

Appeal from District Court, Gonzales County; M. Kennon, Judge.

Action by J. M. Brassell and wife against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, and Harwood & Miller, of Gonzales, for appellant. E. B. Cocke, of San Antonio, for appellees.

---

FLY, C. J. This is a suit for damages to Mrs. Maggie Brassell, instituted by her and her husband, J. M. Brassell, alleged to have accrued from personal injuries inflicted upon her by a fall from the steps of a car belonging to appellant. It was alleged that she was a passenger on the train of appellant, and that when she attempted to alight, at her destination, she fell and was injured by reason of the negligence of appellant in failing to provide a suitable place for passengers to leave the train, in not providing some one to assist passengers in alighting. The cause was tried by jury, and resulted in a verdict and judgment for appellees in the sum of $6,000.

[1, 2] There is no necessity for joining the wife with the husband in cases of this character; but as no objection was interposed to the joinder, and no injury probably resulted therefrom, it is permitted. Railway v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78. We merely call attention to it in order that this case may not be taken as a precedent for joining the wife with the husband, to recover damages to her person.

The facts of this case show that on June 24, 1913, Mrs. Brassell, in getting off a train at Sutherland Springs, fell to the ground. She got up, walked to the picnic grounds, and spent the day there, returning to her home at night. The next morning she arose and prepared breakfast, and at noon prepared dinner. She had some bruised spots about her knee and some swelling from the knee down. She walked from the train to and from the picnic grounds without assistance. Mrs. Brassell, when she fell, stated that her "shin was skinned," but spoke of no other injuries. When she reached home she got out of the coach "just like any other passenger and walked home," a distance of 600 yards. She was hurt on Tuesday, and called in her family physician on Thursday. She went to church on the following Sunday night. She did not use crutches for a week or more after the accident, and then not until advised to do so by the doctor. No bones were broken or fractured, and the skin was not broken in any place. Her doctor thought that the sciatic nerve was probably injured, but was not certain, and all his prognostications of trouble were based on the hypothesis that the nerve was injured. He testified that, if that nerve had been severely injured, it would have shown immediately, but that a slight injury "would take several days to develop." He diagnosed the case as "traumatic sciatica," but stated that "it is very rare that sciatica is caused by a traumatic injury." He said that when he last examined Mrs. Brassell "her limb was absolutely normal." She did not lose any weight. Two other physicians examined Mrs. Brassell about a year after she was hurt and found her limb normal. She complained of soreness in certain spots that were touched, but the examination was merely subjective, and depended on her statements alone. There was nothing visible to show any injury whatever. Her physician stated that he thought "Mrs. Brassell, in course of time, would absolutely recover." Some, at least, of the pains complained of, had no connection with her fall, acording to the testimony of the physicians.

[3] The burden of showing contributory negligence never shifts to the plaintiff, whatever may have been the ruling of the Supreme Court to the contrary formerly. Whenever the evidence offered by a plaintiff shows contributory negligence on his part, a verdict should be instructed for the defendant. The burden has not been shifted to him, but he has merely failed to make out his case. As long as there is a question of fact to be submitted to a jury, the burden of establishing negligence rests on him who alleged it. The court did not err in this case in placing the burden upon appellant of establishing contributory negligence. Railway v. Harris, 103 Tex. 422, 128 S. W. 897; Railway v. Pennington, 166 S. W. 464.

[4, 5] The affidavits of jurors show that the amount of damages allowed by the jury was arrived at by each juror placing the amount he thought should be allowed on a slip of paper, and then adding the amounts and dividing them by 12. Most of the jurors swore that they did not agree to abide by the result, and some well posted ones testified that they agreed that they would not abide by the result. The fact remains, however, that with a few dollars added to obtain a round sum, the result of the addition and division became the verdict of the jury. At least one of the jurors, Albert Long, swore in regard to the manner in which the verdict was obtained:

"We thought that was the best way to get at it, and it was my understanding that that would be the verdict when we arrived at it in that way."

Not only was the verdict arrived at as herein indicated, but two of the jurors narrated their personal experiences with sciatica, and one of them uncovered his leg and made profert of the effects of the disease thereon. There were knots on the leg, which the juror stated were produced by sciatica. One of the sciatic jurors stated to the jury that the evidence showed Mrs. Brassell had sciatica, and that it was a very bad case. It had been testified by physicians that it was possible for sciatica to come from traumatism, but conveyed the impression that sciatica so caused was very rare. However, on the jury were two men, one of whom stated that the disease had come to him by reason of a strain he received in lifting corn from the ground, and the other contracted it from unloading cotton at a gin. We are not left in doubt, if from the facts there could be a reasonable doubt, as to the object the jurors had in view in testifying as to their experience, for one of the jurors swore:

"I suppose they did it to aid the jury. They wanted to let the rest of us know how bad it was."

One of the sciatic jurors voted for $8,000 damages, and the other for $8,500. There was one juror who voted for $2,000 damages; but, under the scheme adopted for ascertaining the damages, he cheerfully agreed to a verdict for $6,000. Adams, a juror, swore that he heard the testimony and experience about sciatica discussed before a vote as to damages was taken. That evidence was not contradicted; the other jurors who spoke of it being uncertain as to when the experiences were given. Even Warren, one of the experience men, would not be positive as to when the experiences were given. The evidence of the two jurors must undoubtedly have had its influence on the amounts placed on the slips of paper, some of which were as high as $10,000. It cannot be imagined that the two jurors who had sciatica would have been allowed to testify in the courtroom as to how it affected them and show the effects of it on their limbs, and yet that is what they did in the privacy of the jury room. There is a full discussion of the subject of the misconduct of jurors, and a review of Texas decisions on the subject, in the case of Traction Co. v. Cassanova, 154 S. W. 1190, in which the decision was made by this court. As said by this court in that case:

"Discussions and ex parte statements, such as those made in this case, have reached a limit of danger to the rights of parties, and they must be condemned and discountenanced by appellate courts. The trial courts have ample power to prevent a recurrence of such conduct upon the part of jurors by dealing out swift and rigorous punishment, and they should unhesitatingly do so. Appellate courts have no such power, but are confined to reversals, which merely protect the interests of the injured party, and which must necessarily cause delay in redressing the wrongs a plaintiff may have had perpetrated on him."

It cannot be said that the verdict of the jury was not affected by the manner of arriving at the verdict. The juror who favored the $2,000 had his verdict increased to $6,000 because he considered himself bound by the agreement whether others did or not, for he swore:

"Finally each one put his amount on a piece of paper and put it in a hat, and added it up and divided it by 12, and fixed it up that way."

As herein shown, another juror considered himself bound by the addition and division.

The judgment will be reversed, and the cause remanded.

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes