JAMES THOMAS, Plaintiff and Respondent, *v.* CARL
WHITESIDE, Defendant and Appellant.

No. 11141.
Submitted November 9, 1966. Decided December 21, 1966.
421 P.2d 449.
See also 148 Mont. 390, 421 P.2d 453.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, John C. Sheehy (argued), Billings, for appellant.

Colgrove & Brown, Miles City, Hughes & Bennett, Helena, Roland V. Colgrove (argued), Miles City, Michael J. Hughes (argued), Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a $68,435 jury verdict for personal injuries sustained from the collision of two automobiles. The defendant admitted liability and proceeded to trial to determine damages only.

The accident happened at about 9:00 p. m. May 24, 1963 on a dirt road known as the "U-ALL ROAD" three miles north of Rock Springs, Montana. Respondent was traveling south with his wife Eileen Thomas, and four children as passengers as the appellant approached from the south. The two automobiles met near the crest of a hill in what was described as a nearly head-on collision. James Thomas, plaintiff and respondent in this action, and his wife brought separate actions against the defendant and appellant, Carl Whiteside, to recover for injuries they allege to have sustained from this collision. Eileen

Thomas had a jury verdict for $12,550 which was also appealed and is reported as cause No. 11154, 148 Mont. 390, 421 P.2d 453.

The verdict was in general form without specification of amounts to the various elements of damages covered by the instructions. It is the giving of instructions and admission of evidence and not the excessiveness of the verdict that is specified as error.

Appellant's principal specifications of error can be summarized as follows: Appellant asserts that the record does not show any evidence of loss of earning capacity and therefore it was error to instruct the jury that a loss of capacity to earn money in the future was an element of damages in this case, and; therefore it was also error to allow testimony concerning the present value of future payments and to instruct the jury thereon.

To support the contention that there was no proof of a loss of earning capacity the appellant states that the respondent failed to show that his actual earnings after the injury were less than before being injured. Appellant does not suggest that there was a failure to establish respondent's earning capacity prior to the injury. We would agree that the record is sufficient for the jury to arrive at the value of respondent's earning capacity prior to the injury and therefore limit ourselves to the issue of what proof is required to show that an established earning capacity has been diminished.

The respondent was the only person who testified concerning his work and earnings in the past. Prior to the accident he had worked for 20 years as a tractor operator moving earth to build dams and on other construction projects. As a tractor operator he was paid $3.00 per hour every day of the week except holidays and rainy days for the eight months of the year that the weather was favorable. As a result of the accident respondent found the operating of an earth moving machine to be painful and was forced to change his occupation to that of custom haying, house moving and other odd jobs. The only testimony

concerning respondent's income after the accident was that in 1963 he reported a loss of $636 on his income tax return and on his 1964 return he reported net income of $2,000.00. Cross-examination brought out the facts that the $636 loss reported for 1963 included depreciation on equipment owned by the respondent and further that the respondent did not know how much of the $2,000 net income reported for 1964 represented compensation for personal services as distinguished from income from the use of property. Other testimony indicated that the respondent was still doing heavy work and otherwise leading an active life.

The testimony given at the trial from which the jury could have concluded a permanent reduction in earning capacity was as follows: The respondent testified that he suffered pain in his left leg, hip and knee, a deep aching pain in his lower back that is severely aggravated by prolonged physical exertion, pain associated with reduced rotation of the neck and frequent headaches. Respondent's doctor was the only source of medical testimony at the trial and he testified that the respondent suffered damage to the 5th cranial nerve and injury to intervertebral discs and spinal nerve in the region of the 4th and 5th lumbar vertebrae. The doctor found that the symptoms of these injuries were a 15-20 degree limitation in the rotation and movement of the neck, pain, tenderness, muscle spasm, and reduced strength on the left side of respondent's body. Respondent's doctor concluded that these injuries are permanent, that the respondent should not do any heavy work and that if he did his condition would get worse.

Impairment of earning capacity is different from loss of wages. It is the permanent diminution of the ability to earn money in the future. The loss is a part of general damages which may be inferred from the nature of the injury without proof of actual lost earnings or income. Proof of the injured person's previous health, age, occupation, skills, education, probable number of productive years remaining, physical and

mental impairment proximately caused by the injury and similar factors are sufficient to infer a loss of an established earning capacity. Connolly v. Pre-Mixed Concrete Co., 49 Cal.2d 483, 319 P.2d 343; Murray v. Mossman, 52 Wash.2d 885, 329 P.2d 1089; Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029.

We can see no reason to assume that the period between the injury and the trial should be so representative of the injured person's future earning capacity as to conclusively establish the damages in every case. The fallacy of this assumption is made manifest in this case where there is medical testimony to the effect that the disability may become worse. While the injured person's earnings after the injury would be persuasive evidence it is only one source which is to be considered along with all other evidence relevant to the person's earning capacity prior to the injury and any diminution that was proximately caused by the injury. We reached a similar result while interpreting workmen's compensation statutes in Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340. Recently we held that it was not error to allow the expert testimony of an economist relating to the probable earning capacity of a student who died prior to graduation and who had not yet been employed at his intended profession. See Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979. On the authority stated above it is no longer the rule that Robinson v. F. W. Woolworth Co., 80 Mont. 431, 261 P. 253, states the correct measure of damages wherein it was held that the loss of earning capacity is determined by comparing a person's income before and after the injury.

Appellant specifies as error the admission of testimony of an insurance agent relating to the present values of various sums of money according to his company's annuity experience. The theory of this exception is based upon the conclusion that there is no evidence to support a finding of a reduced capacity to earn money, therefore there was no proper

foundation laid for the naming of any sum of money. No objection was made to the qualification of the witness. Since we have concluded that the record is sufficient to support an inference of reduced earning capacity this specification of error also fails. Placing a dollar value on lost future earnings is necessarily speculative and involves the consideration of many factors. There appears to be no way to assist the jury in adjusting their award to its present value unless it is done by providing evidence of the present values of a wide range of possible awards. The amounts selected should bear a clear relationship to the evidence concerning the nature of the injuries sustained and the mortality evidence which always accompanies claims for future damages. The evidence of present values is not binding upon the jury and the jury is free to make adjustments as they deem necessary. Cornell v. Great Northern Ry. Co., 57 Mont. 177, 187 P. 902. The record shows that the jury was fully and properly instructed on the use of the evidence of present values.

Appellant assigns error because the court gave an instruction on quotient verdicts. The instruction given was the long form quotient verdict instruction from the Montana Jury Instruction Guide. Appellant has stated that there would be no objection to the use of the short form quotient verdict instructions from the MJIG but contends that the additional language in the long form instruction is misleading and prejudicial.

The instruction objected to reads as follows:

"The law forbids you to determine any issue of this case by resort to chance. You will understand this principle of law better, perhaps, if I give you an illustration; suppose that you jurors, or at least eight of you, agree that the plaintiff in this case is entitled to recover damages and you then each set down an amount which each juror thinks plaintiff should be awarded and that you further agree that the average so found will be the amount of your verdict. Such a method would be resorting

to chance and if you should do this I would have to set your verdict aside as being unlawful.

"The error of this method of arriving at a verdict is in your agreeing in advance to use the average figure as your verdict. In this connection, however, you are advised that it is not error or unlawful for you to each set down a figure and find the average as a basis for further discussion of what your ultimate verdict might or will be so long as you do not agree in advance to be bound by that average figure. Also, you are advised that if you should follow a procedure along the lines just mentioned it is not necessary that all twelve of your number join in working out some basis for discussion as any eight of you may agree upon a verdict in this case."

This long form instruction appears to be a correct statement of the rule governing quotient verdicts as developed by the opinions of this court. Section 93-5603(2) R.C.M.1947, provides that a new trial may be granted upon a showing that a finding was made, "by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors." This provision was interpreted in Great Northern Ry. Co. v. Benjamin, 51 Mont. 167, 172, 149 P. 968, 969, where it was said: "It is only when the jurors agree in advance that the quotient thus obtained shall constitute the amount of their verdict, and such agreement is carried into effect, that the proceeding constitutes a resort to the determination of chance and is condemned by the statute above." This rule has been reaffirmed in Benjamin v. Helena Light & Ry. Co., 79 Mont. 144, 255 P. 20, 52 A.L.R. 33; Bracy v. Great Northern Ry. Co., 136 Mont. 65, 343 P.2d 848, cert. den. 361 U.S. 949, 80 S.Ct. 403, 4 L.Ed.2d 381; Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4. See also annotation in 8 A.L.R.3d 335.

We suggest caution in the use of this instruction.

However, the use of the long form instruction was not prejudicial in this case because there is nothing presented to this court to indicate that there was any such jury misconduct. Un-

less it is shown that there was an antecedent agreement to arrive at an average verdict and that agreement was adhered to, it shall be presumed that the jury properly performed its duty.

Appellant has assigned two other errors based on instructions. We find no merit in these assignments and they do not raise any issues of law that have not already been discussed herein.

Finding no reversible error the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, CASTLES and ADAIR, concur.