No. 87-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

JOSEPHINE M. BECK,

Claimant and Appellant,

-vs-

FLATHEAD COUNTY, d/b/a FLATHEAD COUNTY
NURSING HOME, Employer,
and
STATE COMPENSATION INSURANCE FUND,

Defendant and Respondent.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Trieweiler Law Firm; Terry Trieweiler argued,
Whitefish, Montana

For Respondent:

Warden, Christiansen, Johnson & Berg; Todd A. Hammer
argued, Kalispell, Montana

Submitted: January 4, 1988

Decided: February 10, 1988

Filed: FEB 1 0 1988

*Ethel M. Harrison*
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Claimant Josephine M. Beck appeals the Workers' Compensation Court order denying her claim for permanent partial disability benefits for loss of actual earning capacity under § 39-71-703, MCA (1985). We vacate the judgment and remand the matter to the Workers' Compensation Court.

Because we are reversing, we limit our review to the following issue:

Is the claimant required to prove an actual wage loss or merely a reduced earning capacity before she qualifies for permanent partial disability benefits under § 39-71-703, MCA (1985)?

Claimant Josephine M. Beck is a forty-three-year-old mother of four adult children. Claimant Beck is currently employed by the Flathead County Nursing Home as a nurse's aide. Claimant's duties as a nurse's aide include feeding, bathing, and changing patients and assisting patients in and out of bed. Claimant has been employed as a nurse's aide for approximately ten years. Previously, she was employed as a waitress, a sales clerk, an anodizer and a plywood plant laborer.

On April 14, 1984, claimant Beck injured her neck, shoulder and arm when a patient, whom she was changing, grabbed her neck and "jerked." In September 1984, Beck underwent back surgery, during which her sixth and seventh cervical vertebrae were fused. Immediately following claimant's injury, defendant accepted liability and paid benefits of $126.61 per week for 105 weeks. On January 22, 1986, defendant denied Beck's claim that she sustained a permanent physical impairment and a permanent reduction in earning capacity. On March 4, 1986, Beck offered to settle for

$50,010.95 for future "whole person" permanent partial disability benefits.

At the time of her injury on April 11, 1984, Beck was earning $4.76 per hour. Claimant returned to work on February 4, 1985. Currently, Beck earns $5.56 per hour. Following hearing on May 21, 1986, the hearings examiner found that Beck was not entitled to permanent partial disability benefits under § 39-71-703, MCA (1985), since she was earning more after her injury. On June 22, 1987, the Workers' Compensation Court adopted the hearings examiner's proposed findings of fact and conclusions of law.

We note the issue discussed below is identical to the issue discussed in Sedlack v. Bigfork Convalescent Center, No. 87-168.

Issue

Is the claimant required to prove an actual wage loss or merely a reduced earning capacity before she qualifies for permanent partial disability benefits under § 39-71-703, MCA (1985)?[1]

Claimant contends that the hearings examiner and the Workers' Compensation Court incorrectly applied § 39-71-703, MCA (1985), which provides:

> Weekly compensation benefits for injury-producing partial disability shall be 66-2/3 of the actual diminution

---

[1]     Section 39-71-703, MCA (1985), was amended by the 1987 Legislature. The cited section makes an award of permanent partial disabililty "66-2/3% of the difference between the worker's actual wages received at the time of the injury and the wages the worker is qualified to earn in the worker's job pool, subject to a maximum compensation rate of one-half the State's weekly rate at the time of injury."

in the worker's earning capacity mea-
sured in dollars subject to a maximum
weekly compensation of one-half of the
average weekly wage. [Emphasis added.]

Section 39-71-116(12), MCA, defines permanent partial disability:

(12) "Permanent Partial Disability"
means a condition resulting from injury
as defined in this chapter that results
in the actual loss of earnings or earn-
ing capacity less than total that exists
after the injured worker is as far
restored as the permanent character of
the injuries will permit. . . . [Empha-
sis added.]

Previously, we defined impairment of earning capacity in a personal injury context as "the permanent diminution of the ability to earn money in the future." Thomas v. Whiteside (1966), 148 Mont. 394, 397, 421 P.2d 449, 451. Pre-injury and post-injury wages are but one factor to consider when determining earning capacity. Earning capacity also includes age, occupational skills, education, previous health, remaining number of productive years and degree of physical or mental impairment. Thomas, 421 P.2d at 451.

The correct test for loss of earning capacity is whether the injury has caused "a loss of ability to earn on the open labor market." Shaffer v. Midland Empire Packing Co. (1953), 127 Mont. 211, 213-214, 259 P.2d 340, 342; Fermo v. Superline Products (1978), 175 Mont. 345, 348, 574 P.2d 251, 253; Hafer v. Anaconda Aluminum Co. (1982), 198 Mont. 105, 109, 643 P.2d 1192, 1195, appeal after remand, 684 P.2d 1114, 41 St.Rep. 1403; Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 1189, 43 St.Rep. 1124, 1128. An injured worker who earns more after his injury may be eligible for workers' compensation benefits if he shows a reduced

4

earning capacity. Fermo, 574 P.2d at 254; Hafer, 643 P.2d at 1195-1196.

In Fermo, claimant was earning more after his injury. However, claimant was suffering great pain that detracted from the speed and efficiency of his work. Claimant was forced to compete against younger and healthier persons for the available work. 574 P.2d at 253. Claimant Fermo also showed loss of capacity to perform his work and a loss of ability to compete in the labor market. Therefore, we affirmed claimant's workers' compensation award under § 92-703.1, RCM 1947 (later § 39-71-703(1), MCA).

In a fashion similar to Fermo, claimant has attempted to show that although she currently earns more, she has a reduced earning capacity. Claimant Beck cites her persistent muscle spasms, numbness, and soreness in her shoulder, back and neck. Beck also testified that her condition grows worse by the end of each working day and that she occasionally misses work due to injury-related headaches. Beck's treating physician corroborated the above-mentioned testimony. Additionally, Norman Johnson, a vocational rehabilitative specialist, testified that the percentage of the Flathead Valley job market for which Beck qualifies has been greatly reduced. Judy Mumford, also a vocational rehabilitative specialist, stated that due to her injury claimant Beck would probably not be able to continue working indefinitely as a nurse's aide. In the event that claimant was forced to compete in the job market, Mumford testified that claimant's earning capacity would be reduced to minimum wage.

Respondents contend that the Workers' Compensation Court properly denied appellant's claim based on her election of remedies. Claimant Beck earned more following her injury. Therefore, respondents contend that she failed to present substantial credible evidence of lost earning capacity. As a

5

result, respondents claim that Beck's remedy is limited to indemnity benefits under §§ 39-71-705 through -708, MCA (1985).[2]

We held in McDanold v. B.N. Transport (Mont. 1984), 679 P.2d 1188, 1191, 41 St.Rep. 472, 476, that a workers' compensation claim could be filed under either § 39-71-703, MCA, or § 39-71-705, MCA. A claim made pursuant to § 39-71-703, MCA, is proper when the compensation benefits are proportional to the actual diminution of earning capacity. McDanold, 679 P.2d at 1191. Similarly, in Hafer v. Anaconda Aluminum Co. (1982), 198 Mont. 105, 643 P.2d 1192, we approved an award of workers' compensation benefits to a claimant who earned more following his injury. We held that a claimant is entitled to compensation benefits upon his showing of reduced earning capacity, evidenced by a diminished chance to gain employment. Hafer, 643 P.2d at 1196; § 39-71-703, MCA.

Respondents also argue that substantial credible evidence supports the Workers' Compensation Court's decision denying appellant's claim of lost earning capacity. Respondents contend that since appellant has remained employed as a nurse's aide earning more following her injury for approximately one year, she has not shown reduced earning capacity. Respondents rely on Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 43 St.Rep. 1124. In Dunn, a millworker's claim for permanent partial disability benefits was rejected after evidence was presented that the claimant received higher wages after her injury and did not prove a reduced earning capacity. 720 P.2d at 1190-1191.

---

2    Sections 39-71-705 through -707, MCA, have since been repealed.

We hold the Workers' Compensation Court erred when it held that claimant was required to prove actual wage loss to qualify for permanent partial disability benefits under § 39-71-703, MCA (1985). We reverse and remand to the Workers' Compensation Court. We instruct the Workers' Compensation Court to determine whether claimant Beck has shown substantial credible evidence of a reduced earning capacity.

Chief Justice

We concur:

Justices

7

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent for the reason that, although the Workers' Compensation Court may have made an overly broad statement when it concluded: ". . . Because she is now earning more than she was at the time of her injury, she is not entitled to an award of permanent partial disability benefits for loss of earning capacity under Section 39-71-703, MCA[,]" there was substantial credible evidence to support the court's decision.

In my opinion, the court correctly characterized the case as involving a <u>possible</u>, <u>prospective</u> loss of earning capacity under § 39-71-705, and noted that the claimant retains her right to elect and petition for further relief. I would affirm.

Justice