No. 88-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

JAMES HURLEY, JR.,
          Claimant and Respondent,
     -vs-

OLIVER DUPUIS, Employer,
     and
STATE COMPENSATION INSURANCE FUND,
          Defendant and Appellant.


APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
              Reardon, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Browning, Kaleczyc, Berry & Hoven; Oliver H. Goe,
          Helena, Montana

     For Respondent:

          Michael C. Prezeau, Whitefish, Montana


                              Submitted on Briefs:  July 8, 1988

                              Decided:   August 11, 1988

Filed:  AUG 1 1 1988

                    _Ethel M. Harrison_
_____
                    Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State Compensation Insurance Fund (State) appeals from a judgment of the Workers' Compensation Court. The Workers' Compensation Court held that the claimant, James Hurley, Jr. (Hurley) is entitled to benefits under § 39-71-703, MCA, based on Hurley's testimony that he was once employed at the rate of $12.44 an hour on a part-time basis and that this amount established his pre-injury earning capacity. We reverse.

The State presents the following issue for our consideration:

Did the Workers' Compensation Court err in calculating Hurley's entitlement to wage loss benefits pursuant to § 39-71-703, MCA, based on his testimony he once earned $12.44 an hour?

On or about August 3, 1985, Hurley suffered a back injury while he was working in a cherry grove for Oliver Dupuis (Dupuis) in Polson, Montana. It is undisputed that Hurley's injury arose out of and in the course of his employment. Dupuis, as Hurley's employer, was enrolled in Plan III of the Workers' Compensation Act and his insurer was the State Compensation Insurance Fund.

The State paid disability benefits to Hurley from August 4, 1985 to the present and Hurley received two advance payments on his permanent partial disability benefits in the amount of $12,000.

On December 12, 1986, Hurley filed a petition for hearing before the Workers' Compensation Court. The petition originally requested permanent total disability benefits, or permanent partial disability benefits, a lump sum advance, attorney's fees and a penalty. The Workers' Compensation

2

Court was presented with the deposition testimony of Hurley, his wife Shadia, vocational rehabilitation specialists Scott McIntosh and Deborah Swigert, Dr. James Urban, Dr. John Stephens and Dr. David Jacobson. The Workers' Compensation Court deemed the case submitted on August 21, 1987 and issued Findings of Fact, Conclusions of Law and Judgment on January 6, 1988.

Hurley was awarded $146.50 per week for 500 weeks for permanent partial disability pursuant to § 39-71-703, MCA. This gave Hurley a total benefit of $73,250. The Workers' Compensation Court also determined that Hurley was entitled to a lump sum, in part, to buy transportation and to extinguish some debt obligations. The § 39-71-703, MCA benefits were calculated on the basis of Hurley's pre-injury earning capacity being $12.44 an hour, which was an amount he earned for one or two weeks working on a part-time basis for an employer, whom Hurley could not name, in Wells, Nevada. It is from this method of calculating Hurley's § 39-71-703, MCA, benefits that the State appeals.

Previous to his employment in Polson, Hurley had a well-traveled job history. In answers to interrogatories and in an exhibit attached to his deposition, Hurley lists fifteen different jobs over a period of ten years. His longest length of employment at any location was from the fall of 1982 to the spring of 1984 at a ranch in Refugio, Texas. Other than his alleged job in Wells, Nevada, Hurley's highest paying job was for $7.00 an hour as a laborer for a construction company in Salt Lake City, Utah. In the majority of his employment, Hurley was paid between $4.00 and $5.00 per hour and remained employed for only a few months.

The State claims on this appeal that the pre-injury earning capacity determined by the Workers' Compensation

Court was erroneous and therefore Hurley should not be entitled to $146.50 per week. We agree.

This case was determined by the Workers' Compensation Court after it reviewed the deposition testimony of the claimant, his wife, his treating physicians and other physicians who treated his injury, and rehabilitative experts. The State argues that this Court is in as good a position to review the deposition testimony as the Workers' Compensation Court and we agree.

> [W]hen the critical evidence . . . is entered by deposition, we have held that "this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given record testimony."

Snyder v. San Francisco Feed & Grain (Mont. 1987), 748 P.2d 924, 929, 44 St.Rep. 2216, 2224; citing Jones v. St. Regis Paper Co. (1982), 196 Mont. 138, 146, 639 P.2d 1140, 1144. See also, Shupert v. Anaconda Aluminum Co. (Mont. 1985), 696 P.2d 436, 439, 42 St.Rep. 277, 281-282; Lamb v. Missoula Imports, Inc. (Mont. 1984), 684 P.2d 498, 41 St.Rep. 1414.

The medical testimony showed a diagnosis of spondylolysis and spondylolisthesis at L-5 and S-1. Hurley was forced to undergo surgery. The testimony showed that upon reaching maximum medical stability, Hurley could no longer perform any work which required heavy labor. Dr. Jacobson testified that Hurley would not be able to lift more than 25-30 pounds on a regular basis or more than 50-100 pounds on an occasional basis. Dr. Stephens' evaluation was similar to Dr. Jacobson. Dr. Stephens expressed concern about further injury if Hurley did not comply with limited physical exertion. Dr. Urban, who treated Hurley from May 29, 1986 testified that Hurley was restricted from lifting more than 60 pounds.

4

This testimony clearly shows that Hurley suffered a loss of earning capacity that caused "a loss of ability to earn on the open labor market." Beck v. Flathead County (Mont. 1988), 749 P.2d 527, 529, 45 St.Rep. 215, 217. However, the issue of this case is the proper determination of just how Hurley's proper loss should be calculated.

Hurley withdrew his claims for permanent total disability pursuant to § 39-71-116(13), MCA, and his claim for a penalty. Therefore, we are only concerned here with his entitlement under permanent partial disability. We have said that a partially disabled worker may choose two types of permanent partial benefits under Montana law. Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 1189, 43 St.Rep. 1124, 1128. "Such a worker can elect benefits under § 39-71-703, MCA, for actual loss of earning capacity or indemnity benefits under § 39-71-705, -708 for possible prospective loss in earning capacity." Dunn, 720 P.2d at 1189.

In this case, § 39-71-703(1), MCA, as it read prior to its amendment in 1987, controls since Hurley's injury occurred in 1985. See, Buckman v. Montana Deaconess Hospital (Mont. 1986), 730 P.2d 380, 382, 43 St.Rep. 2216, 2218. The Workers' Compensation Court appropriately stated that § 39-71-703, MCA benefits were calculated to determine "actual lost earning capacity."

However, in determining this actual lost earning capacity, the Workers' Compensation Court adopted Hurley's theory that it should be based on a pre-injury earning capacity of $12.44 per hour. The Workers' Compensation Court applied this pre-injury maximum to his post-injury earning capacity. Both parties, through their rehabilitation experts (McIntosh for Hurley and Swigert for the State), were fairly close in the estimated post-injury earning potential.

5

McIntosh asserted a $4.50 per hour post-injury earning potential while Swigert estimated Hurley's post-injury earning potential at $5.00 to $6.00 per hour. The court's determination was as follows:

> It is with the post-injury earning potential that the pre-injury capacity becomes important. For example, we will set out by calculation how the various figures being considered can affect the claimant's weekly partial disability rate.

|                  |              |            |             |
|------------------|--------------|------------|-------------|
| Pre-Injury/Hr.   | $12.44       | $4.50      | $5.00       |
| Post-Injury/Hr.  | 4.50         | 4.50       | 4.50        |
|                  | $ 7.94/hr    | $0.00      | + .50/hr    |
|                  | x 40         | x 40       | x 40        |
|                  | $317.60      | 0.00       | $20.00      |
|                  | .66 2/3      | .66 2/3    | .66 2/3     |
|                  |              |            |             |
| Maximum Rate     | $146.50      | no partial | $13.32      |

> Thus, using the 500 weeks of benefit potential (whole man injury) claimant concludes the partial disability entitlement at $71,250.00 and defendant finds none, beyond this impairment award.

> Thus, to identify the precise issue more directly, we can ask the question of whether or not in a 703 analysis, a claimant's highest pre-injury earnings, regardless of how long he held the job, must be considered. While defendant admits that claimant might have earned as much as $12.44 per hour, given his sporadic work history, his nomadic lifestyle and the fact that there is no evidence that claimant was actually an acceptable worker at that rate requires the Court to discount the figure substantially. While we would agree that if claimant was fired from the $12.44 per hour job because he couldn't do it, there would be a substantial question as to utilizing that figure for an earnings example, but such is not the case here. The record discloses only that the

6

> claimant did a job that paid that much,
> even if only for a short time. We also
> see some relevance to defendant's
> argument that two or three weeks'
> earnings over an individual's eight-year
> work life is not a true measure of his
> actual earning capacity. But we are
> reluctant to set a standard or policy
> whereby no consideration is to be given
> to such earning. Otherwise, a claimant
> who is injured on the first day of a new
> job paying $15.00 per hour with a
> previous earning maximum of $5.00 per
> hour would be seriously prejudiced in
> establishing a future loss of earning
> capacity. Also, difficult economic times
> which have forced skilled tradesmen laid
> off from their usual $12.00 per hour
> machinist job and permanently injured
> working part-time at a fast food place
> for $3.65 per hour would be punished
> unfairly.

We recognize and appreciate the Workers' Compensation Court's concern as outlined. Generally, the Workers' Compensation Court will be upheld upon a finding of substantial credible evidence. Snyder, 748 P.2d at 929. However, under the facts of this case, substantial credible evidence has not been produced to show that Hurley had a pre-injury earning potential of $12.44 per hour.

Impairment of earning capacity has been defined as "the permanent diminution of the ability to earn money in the future." Sedlack v. Bigfork Convalescent Center (Mont. 1988), 749 P.2d 1085, 1087, 45 St.Rep. 199, 202; Thomas v. Whiteside (1966), 148 Mont. 394, 397, 421 P.2d 449, 451. Additionally, we have stated that earning capacity is not only determined by a comparison of pre-injury and post-injury wages but also by age, occupational skills, education, previous health, remaining number of productive years and

7

degree of physical or mental impairment. Beck, 749 P.2d at 529; Thomas, 421 P.2d at 451.

Here, although Hurley was thirty years old at the time of filing this claim, he has no real occupational skills; he dropped out of school in the tenth grade and obtained a G.E.D. Due to his back injury he is basically removed from any manual labor employment. The most important fact is that he never maintained a job for an extended period of time so that he could establish higher earnings.

Granted, McIntosh testified that in the Denver area, current labor market earnings for concrete workers ranged up to $517.20 per week which translates to approximately $13.00 per hour in a 40-hour work week. However, due to Hurley's previous work history it is extremely unlikely that he would be able to obtain one of these jobs or remain employed.

Further, in analyzing Hurley's testimony, his claim of a $12.44 per hour wage is suspect. Hurley originally answered interrogatories and stated that he worked at this rate the "winter, 1981." Upon being deposed, it was ascertained that Hurley merely worked for this wage, and at another job for this same unknown employer where he was paid $6.00 an hour, for a total of three to four weeks. He further admitted that he worked at the $6.00 an hour job for two or three of the three or four weeks worked. Hurley had no W-2 forms from this employment and he paid no taxes on the income.

Further discrepencies are present. Hurley answered interrogatories that he worked as a laborer for a construction company in Salt Lake City, Utah from February to November of 1976 and then with a concrete construction company from December, 1976 to April, 1977. Hurley admitted that in reality there had been at least an eight-month gap between these employments.

We realize that the Workers' Compensation Act, at the time of the injury involved in this case, was to be "liberally construed." Section 39-71-104, MCA (1985); Shupert, 696 P.2d at 441. However, the Legislature could not have meant that this liberal construction did not require substantial credible evidence to support a claim. Here, in light of our review of the depositions; our analysis of Hurley's previous work history, his age, education, remaining working years, and extent of his injury; and, in conjunction with the law as it existed in regard to this case, we determine that the Workers' Compensation Court erred in its determination that Hurley's pre-injury earning capacity was $12.44 per hour.

We reverse.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

9