No. 89-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

ROSCOE C. COMBS,

        Claimant and Appellant,

   -vs-

WAGAR LOGGING, Employer,
     and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
               Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        David Lauridsen; Bothe & Lauridsen, Columbia Falls,
        Montana

    For Respondent:

        Rebecca Smith; Smith Law Firm, Helena, Montana

---

Submitted on Briefs: Oct. 31, 1989

Decided: January 5, 1990

Filed:

'90 JAN 5 PM 1 59
ED SMITH, CLERK
MONTANA SUPREME COURT

_____
      Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This appeal arises from an order by the Workers' Compensation Court of the State of Montana. Claimant appeals. We affirm.

The sole issue on appeal is whether the Workers' Compensation Court's findings of fact regarding claimant's loss of earning capacity are supported by substantial credible evidence.

Mr. Rosco Combs suffered a compensable industrial injury on July 7, 1986, while working as a knot bumper for Wagar Logging. A log struck him, injuring his back. Mr. Combs received temporary total disability benefits from July 7, 1986, through August 29, 1988, when benefits were reduced to permanent partial based on a six percent impairment rating. Claimant elected to calculate permanent partial disability benefits on an actual loss of earning capacity, pursuant to § 39-71-703, MCA (1985).

The Workers' Compensation Court determined that Mr. Combs was entitled to 500 weeks of permanent partial disability benefits at the rate of $34.68 per week, pursuant to § 39-71-703, MCA (1985), which states in pertinent part:

> Compensation for injuries causing partial disability. (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.

The Workers' Compensation Court found that Mr. Combs' post-injury earning capacity was $3.34 per hour. Comparing this to his pre-injury earning capacity of $4.65 per hour, the court determined he had a loss of earning capacity of $1.30 per hour, or $52.00 per week. The court then found

2

that Mr. Combs was entitled to 2/3 of that loss, or $34.68 per week.

On appeal, Mr. Combs contends that the Workers' Compensation Court erred in its findings regarding his earning capacity. He claims his pre-injury earning capacity was $16.55 per hour, and that the court's finding that his pre-injury earning capacity was $4.65 per hour is not supported by substantial credible evidence.

This Court's standard of review is to determine whether substantial credible evidence supports the findings of the Workers' Compensation Court. Sharkey v. Atlantic Richfield Co. (1989), 777 P.2d 870, 872, 46 St.Rep. 1169, 1171.

The documented evidence of Mr. Combs' work history includes only three brief jobs in the three years prior to this injury. In 1983 Mr. Combs worked for Doug Henry as a knot bumper, earning $400 total for the year. In 1984 Mr. Combs worked as a construction laborer for Hugh Louden, earning a total of $638.48. He worked approximately 50 hours for Mr. Louden; thus his hourly wage was about $12.96. In May 1986 Mr. Combs began working for Wagar Logging. He was injured on July 7, 1986. He had worked 414 hours and had earned $1925.00; thus his average hourly wage was $4.65. The Workers' Compensation Court found that Mr. Combs' work history prior to 1983 had not been documented or presented in a consistent manner and could not be considered by the court. The court determined the amount of $4.65 to be Mr. Combs' pre-injury earning capacity.

Claimant contends the court should have determined his pre-injury earning capacity to be $16.55. He bases this assertion on deposition testimony from Mr. Hugh Louden, a previous employer. Mr. Louden testified that in 1984 Mr. Combs worked for him as a laborer in government construction jobs which paid wages of $12.69 per hour, according to

3

Davis-Bacon scale. Claimant asserts that in the current market these wages would amount to $16.55 per hour, assuming Mr. Combs was at the top of the scale.

Claimant also relies on testimony from Mr. Charles Schloss, a vocational rehabilitation expert, who testified that in his opinion Mr. Combs could have been trained to be a sawyer. He testified that as a construction worker, Mr. Combs would not reach his maximum earning capacity until age 30. Claimant contends that had he not been injured he would have eventually earned $8.00 per hour as an experienced knot bumper. Additionally, Mr. Combs asserts that had he not been injured he would have been promoted to sawyer, or skidder operator, earning a possible $13.75 per hour.

We have previously stated the following standards in determining earning capacity:

> Impairment of earning capacity has been de-
> fined as "the permanent diminution of the ability
> to earn money in the future." Additionally, we
> have stated that earning capacity is not only
> determined by a comparison of pre-injury and
> post-injury wages but also by age, occupational
> skills, education, previous health, remaining
> number of productive years and degree of physical
> or mental impairment. (Citations omitted.)

Hurley v. Dupuis (1988), 759 P.2d 996, 998-99, 45 St.Rep. 1457, 1461.

In Hurley, this Court faced a similar issue. In that case the Workers' Compensation Court calculated pre-injury earning capacity at $12.44 per hour, which was an amount claimant earned working one or two weeks on a part time basis. This Court reversed, stating:

> Here, although Hurley was thirty years old at
> the time of filing this claim, he has no real
> occupational skills; he dropped out of school in
> the tenth grade and obtained a G.E.D. Due to his

4

> back injury he is basically removed from any manual labor employment. The most important fact is that he never maintained a job for an extended period of time so that he could establish higher earnings.
>
> Granted, McIntosh testified that in the Denver area, current labor market earnings for concrete workers ranged up to $517.20 per week which translates to approximately $13.00 per hour in a 40-hour work week. However, due to Hurley's previous work history it is extremely unlikely that he would be able to obtain one of these jobs or remain employed.

Hurley, 759 P.2d at 999.

In Hurley we also noted that the claimant had not been able to verify his claimed previous employment with either a W-2 or income tax return.

Although in the present case Mr. Combs attempts to distinguish Hurley, we conclude that the facts are analogous and the same rationale applies. Mr. Combs is 25 years old, single, and has a ninth grade education. Because he is dyslexic, his ability to read is minimal. He is an unskilled laborer. Since dropping out of school, Mr. Combs has worked at various construction jobs, logging jobs, and other jobs requiring manual labor. His work history demonstrates an inability to stay at one job for more than a few weeks or months. Mr. Combs has filed no tax returns since 1977, and he has been unable to document most of his past wages.

At the hearing, testimony was received by deposition from Dr. Trontel, a clinical psychologist who examined Mr. Combs. His testimony indicated that Mr. Combs has a low level of reliability and responsibility. He has difficulty getting along with people and in accepting authority. He testified that Mr. Combs would not perform well in any job requiring close supervision. Dr. Trontel testified that Mr. Combs has been incarcerated over 15 times, indicating severe

5

interpersonal difficulties. He also testified that Mr. Combs stated that he had been fired several times.

Although claimant urges that in 1984 he earned wages according to Davis-Bacon scale, the testimony from his employer indicated that he only earned these amounts for one to two weeks on four or five separate occasions. Mr. Combs also earned $12.00 to $14.00 per hour as a truck driver for Mr. Louden in 1984, but this was only for 3 or 4 days.

Claimant's contentions regarding his potential to become an experienced knot bumper, or his future potential of becoming a skidder operator, are speculative and unlikely based on his previous work history. Mr. Combs has been unable to keep a job for more than two months. As stated by Dr. Trontel, he is neither persistent nor responsible. Testimony by Dennis Wagar, his employer at the time of his injury, demonstrated that Mr. Combs was not being trained for the job of skidder operator.

The Workers' Compensation Court considered testimony by claimant, three vocational rehabilitation consultants, Dr. Trontel, and Mr. Combs' previous employers, Mr. Hugh Louden and Mr. Dennis Wagar. The court considered not only pre-injury wages, but also other relevant factors as stated in Hurley. However, applying other factors such as claimant's age, skills, and education is unhelpful to claimant in this case. As in Hurley, from claimant's previous work history, it is unlikely that he would remain employed long enough to be trained for a higher-paying position. The court's finding that Mr. Combs' pre-injury earning capacity of $4.65 per hour was based on documented evidence of claimant's actual wages at the time of injury. We conclude that substantial credible evidence supports the finding of the Workers' Compensation Court that claimant's pre-injury earn-

6

ing capacity was $4.65 per hour. We affirm the Workers' Compensation Court on this issue.

Claimant also contends that the hearing examiner erroneously calculated permanent partial benefits by calculating a weekly wage of $186.00 ($1925.00 amount earned, divided by 414 hours worked multiplied by 40 hours per week). He contends that the insurer previously based temporary total benefits on a weekly wage of $214.30. Claimant does not contend that the numbers used by the hearing examiner are incorrect; rather he contends the weekly wage determined by the hearing examiner is inconsistent with the weekly wage determined by the claims examiner. We conclude that the hearing examiner did not err in his calculation and affirm this portion of the order by the Workers' Compensation Court.

Affirmed.

Justice

We Concur:

Chief Justice

Justices

7

Justice William E. Hunt, Sr., dissenting.

I dissent.

The majority correctly notes that decisions of the Workers' Compensation Court must be based on substantial credible evidence and yet it makes the assumption that Combs' future work potential is speculative and unlikely. Such rationale is itself speculative.

The majority states that Combs' contentions concerning his pre-injury earning capacity are undocumented. Combs, however, did present a witness who testified that Combs had worked for him at a rate of $12.69 per hour (Combs asserts this rate would be $16.55 on the current market). Nonetheless, this testimony was ignored by the court when establishing Combs' loss of earning capacity. As noted in Beck v. Flathead County (Mont. 1988), 749 P.2d 527, 45 St.Rep. 215, loss of earning capacity is defined as "a loss of ability to earn in the open labor market." Certainly, Combs' injury has significantly reduced his ability to earn.

The majority refused to consider the factors set forth in Beck, 749 P.2d 527, including age, occupational skills, education, previous health, remaining number of productive years and degree of physical or mental impairment when arriving at the loss of earning capacity amount. Even if the court properly calculated the differences between Combs' pre-injury and post-injury wages, the difference is but one factor to consider among many. See, Beck, 749 P.2d at 529.

I would reverse for a recalculation of Combs' pre-injury earning capacity.

_____
Justice

Justice John C. Sheehy joins in the foregoing dissent of Justice William E. Hunt, Sr.

_____
Justice