No. 89-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990


ROSE LEE WINCHELL,

        Claimant and Appellant,

    -vs-

G & B MOTORS, INC.,

        Employer,

    and

WESTERN GUARANTY FUND SERVICES,

        Defendant, Respondent and
            Cross-Appellant.


APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Donald R. Marble; Marble Law Office, Chester,
            Montana

        For Respondent:

            K. Dale Schwanke; Jardine, Stephenson, Blewett &
            Weaver, P.C., Great Falls, Montana


                        Submitted on Briefs:  June 28, 1990

                               Decided:  November 8, 1990

Filed:


_____
                Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

This appeal arises from a judgment entered by the Workers' Compensation Court. Both claimant and Western Guaranty Fund Services appeal. We affirm in part and remand.

On June 1, 1981, claimant injured her lower back while helping two co-workers carry a new pickup box to a wrecked pickup truck. It is undisputed that claimant's injury occurred while in the course and scope of employment with G & B Motors, whose carrier is Western Guaranty Fund Services (insurer). Claimant was hospitalized at the Northern Montana Hospital from June 5, 1981 to June 14, 1981. Claimant's treating physician, Dr. James E. Elliott, diagnosed her injury as a severe paravertebral muscle spasm. Claimant returned to work on July 1, 1981, and at that time was taking medications to relieve her back pain.

On September 20, 1981, during her lunch break at work, claimant fainted and was found lying on a concrete floor. She was taken to Dr. Elliott for medical services. Claimant told Dr. Elliott that she was experiencing back pain and that the back pain was related to the industrial accident of June 1, 1981. Claimant stopped working near the end of October, 1981, and has not worked since.

On July 6, 1981, claimant filed a workers' compensation claim. The insurer accepted her claim and paid benefits from June 3, 1981 to June 30, 1981. The insurer denied subsequent demands for benefits, claiming that claimant's problems were not due to the June 1, 1981 accident on the basis that the claimant had returned

2

to work and that it had received no medical reports since the last report of June 5, 1981.

Claimant filed a petition with the Workers' Compensation Court to resolve the dispute between herself and the insurer. A trial was conducted on September 30, 1986 before the Workers' Compensation Court. The issues before the court were whether the claimant was temporarily totally disabled, permanently totally disabled, or permanently partially disabled, and if permanently partially disabled, whether claimant was entitled to permanent partial disability benefits. Also in issue was whether claimant was entitled to attorney's fees and costs and a 20% penalty.

The court heard the testimony of the claimant and nine witnesses. Other testimony was presented to the court by way of post-trial depositions of various physicians and psychologists who had treated or examined the claimant. Conflicting testimony was presented regarding claimant's condition. For example, claimant's treating physician and a psychologist opined that claimant's pain was legitimate while two other physicians opined that claimant was malingering for economic gain.

On December 22, 1987, the Workers' Compensation Court entered its findings of fact and conclusions of law and judgment. The court concluded that claimant's disability and benefits could not be determined at that time. Claimant was ordered to undergo further testing, treatment and evaluation at a pain clinic to be selected by the parties. The court retained jurisdiction and ordered the insurer to pay $93.33 per week in interim temporary

total benefits until a final judgment was issued. The court also determined that claimant was not entitled to a 20% penalty and the issue of attorney's fees and costs were held in abeyance until issuance of final judgment.

After the issuance of the court's order there were numerous post-judgment motions filed and eventually claimant underwent treatment and evaluation at the Montana Deaconess Pain Rehabilitation Center in Great Falls from May 22, 1988 until June 17, 1988. The insurer, under order of the court, paid the cost of claimant's treatment at the pain clinic.

A rehearing was conducted on October 18, 1988 before a hearing examiner. The evidence submitted was limited to the time period after the first trial. However, the parties stipulated that the court could rely upon the record already before it in addition to further evidence in making its determination on rehearing. On rehearing, claimant again testified as did her vocational expert. Others testified for the defense. Post-trial depositions were taken of the insurer's vocational expert and of the director and personnel from the pain clinic.

On July 7, 1989, the Workers' Compensation Court entered its findings of fact, conclusions of law and judgment. The court held that: (1) claimant is permanently partially disabled and under § 39-71-703, MCA (1979), is entitled to 500 weeks of permanent partial benefits at the rate of $26.68 per week; (2) insurer is to receive credit for benefits paid after December 22, 1987; (3) claimant is not entitled to any temporary total disability

4

benefits; and (4) claimant is entitled to attorney's fees based on the amount of benefits now awarded above the benefits paid by the insurer since December 22, 1987. Other facts will be discussed as necessary.

The issues raised by claimant on appeal are:

1. Did the Workers' Compensation Court err in its determination of claimant's permanent partial disability benefit rate?

2. Do the findings of fact and conclusions of law support the Workers' Compensation Court's determination that claimant is not entitled to back temporary total disability benefits?

3. Did the Workers' Compensation Court err in its determination of claimant's attorney's fees and in denying claimant a 20% increase in her award pursuant to § 39-71-2907, MCA (1979)?

The insurer presents the following additional dispositive issue on cross-appeal:

Did the Workers' Compensation Court err in ordering a rehearing?

I.

The Workers' Compensation Court determined that claimant is entitled to 500 weeks of permanent partial disability benefits at the rate of $26.68 per week, pursuant to § 39-71-703, MCA (1979), which states in pertinent part:

> Compensation for injuries causing partial disability. (1) Weekly compensation benefits for injury producing partial disability shall be 662/3% of the actual diminution in the worker's earning capacity measured in

5

dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.

On appeal, claimant contends the court's finding that she is entitled to benefits at the rate of $26.68 per week is not supported by substantial credible evidence. The insurer, in turn, argues that claimant is not entitled to any permanent partial disability benefits because claimant failed to prove by a preponderance of the medical evidence that she was permanently partially disabled.

We begin with whether the Workers' Compensation Court erred in its determination that claimant is permanently partially disabled. It is well settled that decisions of the Workers' Compensation Court will be upheld upon a finding of substantial credible evidence. Snyder v. San Francisco Feed & Grain (1987), 230 Mont. 16, 25, 748 P.2d 924, 929; Tocco v. City of Great Falls (1986), 220 Mont. 221, 226, 714 P.2d 160, 163. The determinative question, therefore, is whether in looking at the record as a whole, substantial credible evidence exists to support the decision of the Workers' Compensation Court that claimant is permanently partially disabled. In reviewing the record on appeal, we find the medical evidence, together with the other evidence, is sufficient to establish that claimant is permanently partially disabled.

Section 39-71-116(12), MCA (1979), defines permanent partial disability as:

> [A] condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability less than total that exists after the injured worker is as far restored as the permanent character of the injuries will permit.

6

It is undisputed that claimant's accident and injury occurred while in the course and scope of her employment with G & B Motors. The evidence shows that prior to the accident, claimant had been a strong person with no history of previous back problems. Claimant's position with G & B Motors involved cleaning duties including cleaning floors, washing and vacuuming cars, changing tires, and cleaning water, mud, oil and dirt from a sump pit and carrying this sludge in two five-gallon buckets weighing 40 to 50 pounds apiece. These duties required heavy lifting, kneeling, bending and pushing.

The evidence also shows that after the accident claimant went to numerous physicians and all diagnosed a soft tissue injury. Claimant's treating physician, Dr. Elliott, testified that most cases of pain have a psychological component and in claimant's case there is a high psychological basis to her pain. Additionally, Dr. Shubat, a clinical psychologist, testified that claimant is "a characteristic long-term, low-back pain, pain patient."

Dr. Elliott, Dr. Shubat, and Dr. Labunetz, a neurologist, all were of the opinion that claimant's problems began with her industrial injury, based on a reasonable degree of medical certainty and all testified claimant would benefit from treatment at a pain clinic. Dr. Elliott further testified that without treatment at a pain clinic, claimant's condition would remain the same.

Dr. Hinde, the director of the pain clinic, testified that upon entry into the pain clinic claimant had all the

characteristics of a chronic pain patient. He noted claimant's inconsistent behavior regarding her pain and testified that this is frequently seen in a chronic pain state and does not necessarily indicate malingering. Dr. Hinde diagnosed claimant as suffering from predominately myofascial pain or soft tissue-based pain, which followed a lumbar strain injury. Dr. Hinde was of the opinion that claimant's discomfort occurred as a result of the industrial injury, based on a reasonable degree of medical certainty.

The record shows claimant performed very well at the pain clinic and her condition improved dramatically. At the time of discharge claimant only had occasional reports of discomfort which did not interfere with any of the physical activities she was asked to perform. However, claimant still suffers from limitation in her functional capacity. Occupational therapist Kelly Scott in her discharge summary found claimant could return to work in a medium-range employment where lifting is not greater than twenty-five pounds. Additionally, standing and sitting was limited to "[o]ne hour at a time, no more than 4 hours total out of [an] 8-hour day."

The Workers' Compensation Court, after reviewing the supplemental medical evidence and the testimony of the parties' vocational experts, found that claimant could return to work and earn essentially the same wage, $3.50 to $4.00 per hour, as before her injury. However, the court also considered the other factors for determining earning capacity set forth in Beck v. Flathead County (1988), 230 Mont. 294, 749 P.2d 527. The court in conclusion of law number 3 stated the following:

8

The other factors that must be included in the determination of a loss in earning capacity under Section 39-71-703, MCA, include claimant's age, (42); education and training, (ninth grade education with no vocational training); her previous health (good, although there may have been a preexisting lumbar disc disease aggravated by the injury). She has been released for light or medium work. She does experience pain, which can be minimized by following the pain clinic recommendations. Her 10 percent impairment rating recognizes her pain, which does limit her ability to work long hours standing, or in one position.

Claimant's vocational witness testified that the claimant has a 78 percent reduction in her job market, as a result of the injury. However, she testified that the claimant was earning entry-level wages of $3.50 at the time of the injury and at this date, could also work at entry-level wages and therefore had no actual wage loss at this time.

Defendant's vocational consultant, D. Bruce Carmichael, testified that the claimant could return to her job at the time of her injury or a number of vocational alternatives, which paid equivalent to or greater than what she was earning at the time of her injury.

In considering all of the above factors, the Court concludes that the claimant did suffer a loss of earning capacity under Section 39-71-703, MCA, and with her difficulty in competing in her reduced labor market, has suffered a loss of earning capacity of $1.00 per hour, or $40.00 per week. Claimant's entitlement to permanent partial benefits under Section 39-71-703, MCA, is 66 2/3 percent of her actual diminution in earning capacity, which is $40.00 times 66 2/3 percent, or $26.68 per week. Since claimant's injury is a back injury, not scheduled in Section 39-71-705, MCA, claimant is entitled to 500 weeks, or a maximum of $13,340.00.

The insurer argues that claimant has failed to prove her disability by a preponderance of the medical evidence. In support of its argument the insurer points out the testimony of those medical experts who were of the opinion that claimant was a malingerer. The insurer also stresses that testimony was elicited from pain clinic personnel regarding claimant's inconsistent pain

9

behavior. However, this Court's function upon review is to determine whether substantial credible evidence exists to support the Workers' Compensation Court's findings of facts and conclusions of law; it is not this Court's function to determine whether there is sufficient evidence to support contrary findings. O'Brien v. Central Feeds (Mont. 1990), 786 P.2d 1169, 1172, 47 St.Rep. 251, 254. We hold that the Workers' Compensation Court did not err in finding claimant permanently partially disabled.

Having concluded that substantial credible evidence exists supporting the lower court's determination that claimant is permanently partially disabled, we now turn to whether the court erred in its determination of claimant's benefit rate. As noted earlier, the Workers' Compensation Court found that claimant is entitled to benefits at the rate of $26.68 per week. Claimant contends that the correct rate is $93.33 per week, arguing that the court totally ignored the testimony of claimant's vocational expert that claimant suffered a 78% reduction in her job market as a result of the injury. She claims that the court missed the point presented by her vocational expert that the only work claimant would be able to find in her normal labor market would be in Havre, twenty-eight miles away from home, and that the work, due to her back pain, could only be part-time work.

In the personal injury context, the impairment of earning capacity has been defined as "the permanent diminution of the ability to earn money in the future." Thomas v. Whiteside (1966), 148 Mont. 394, 397, 421 P.2d 449, 451. "Pre-injury and post-injury

wages are but one factor to consider when determining earning capacity. Earning capacity also includes age, occupational skills, education, previous health, remaining number of productive years and degree of physical or mental impairment." (Citation omitted.) Beck v. Flathead County (1988), 230 Mont. 294, 296, 749 P.2d 527, 529. "The correct test for loss of earning capacity is whether the injury has caused 'a loss of ability to earn in the open labor market.'" (Citation omitted.) Beck, 749 P.2d at 529.

In the case at bar the Workers' Compensation Court appropriately considered the factors in determining earning capacity. The court found that claimant does have a number of vocational alternatives and although claimant does experience pain, the pain can be minimized by following the pain clinic's recommendations. We hold that substantial credible evidence supports the Workers' Compensation Court's determination of claimant's earning capacity and her permanent partial disability benefit rate.

II.

Claimant argues the Workers' Compensation Court's findings after the rehearing do not support a conclusion that claimant is not entitled to temporary total disability benefits. She contends the issue of temporary total disability benefits was still before the court at the time of the rehearing but the court's findings are silent on the issue and the only reference regarding this issue is the court's conclusion of law number 4:

11

Claimant is not entitled to any temporary total disability benefits.

This Court did not find any temporary total disability benefits due prior to the Judgment of December 22, 1987, and the evidence presented after that date at the rehearing does not change that determination.

Claimant argues this is an unacceptable conclusion because nothing in the court's judgment following the first trial indicated that the court at that point felt claimant was not entitled to temporary total wage loss benefits. We agree.

The Workers' Compensation Court, after the initial trial, made numerous findings detailing the conflicting testimony which was presented as to whether claimant's back pain was legitimate or whether she was malingering. The court then made the following pertinent conclusions of law:

2. Claimant's disability and benefits cannot be determined by this Court at this time. . . .

While it is undisputed that claimant suffered an injury to her back from an industrial injury that arose out of and was in the course of her employment, serious questions exist as to claimant's current physical condition.

The record in this case is sated with conflicting testimony as to whether claimant's alleged back pain is legitimate or whether she is malingering. . . .

. . .

Therefore, it is this Court's decision that claimant shall be ordered to undergo further testing, treatment and evaluation at a pain clinic. This Court will retain jurisdiction over this matter and will delay its final decision until submission of a report by the pain clinic is received pursuant to the Judgment below.

3. Claimant is to receive interim temporary total benefits which are to begin on the day of this Judgment and are to continue until the final decision of this matter.

12

> Claimant has not worked since terminating with
> employer in October of 1981 and, therefore, has suffered
> a complete loss of wages. There is no question that
> claimant sustained a compensable industrial accident in
> June of 1981. The only issue is whether claimant is
> still incapacitated because of that injury. Because this
> Court is unable to make a decision as to that issue until
> further medical testimony is submitted from the pain
> clinic, this Court finds that interim temporary total
> benefits of $93.33 a week are appropriate under these
> circumstances. . . .

These conclusions are inconsistent and conflicting with the court's conclusion of law number 4 entered after the rehearing. The Workers' Compensation Court did not make a determination that claimant was not entitled to temporary total disability benefits. The court noted that, due to the conflicting evidence of claimant's physical condition, it was unable to determine claimant's disability and benefits, including whether claimant was temporarily totally disabled, and therefore expressly reserved ruling on these issues until further medical evidence could be obtained. After the rehearing, the court made findings relating to claimant's attendance at the pain clinic and concluded that claimant was permanently partially disabled. It was from testimony regarding claimant's physical condition after treatment at the pain clinic that the court was able to come to a determination that claimant was permanently partially disabled. However, although the issue was before the court at the time of the rehearing, no definitive findings were made regarding whether claimant was temporarily totally disabled from the time claimant terminated employment with G & B Motors in October, 1981 until interim total disability benefits were ordered by the court on December 22, 1987.

13

We hold that the findings of fact and conclusions of law are conflicting within, and remand this issue to the Workers' Compensation Court for further proceedings to determine what temporary total disability benefits are due, if any, from the time claimant terminated employment with G & B Motors until the date of permanent partial disability.

## III.

In its judgment after the rehearing the Workers' Compensation Court awarded claimant attorney's fees based on the amount of compensation benefits awarded her at that time above the benefits paid by the insurer after December 22, 1987. The court's rationale in limiting the attorney's fees award was that the court considered it unwarranted to compensate claimant's counsel at the insurer's expense for the court's independent decision to order a pain clinic evaluation. The court stated attendance at a pain clinic was not requested by claimant nor was it part of her case.

Claimant contends she should receive attorney's fees based on back temporary total disability benefits, permanent partial disability benefits and the attendance at the pain clinic, arguing that she made attendance at a pain clinic part of her case.

The insurer also contests the Workers' Compensation Court's award, asserting that claimant was not entitled to an award of attorney's fees. The insurer argues the court stated in its initial decision of December 22, 1987 that claimant had elected to waive any claim to attorney's fees and costs in exchange for going

14

forward with the case and taking post-trial depositions of medical providers. The insurer contends the court's position on the issue of attorney's fees and costs was based on the claimant's failure to exchange all pertinent medical information by the time of the first trial.

When reviewing an award of attorney's fees this Court will not disturb the award absent an abuse of discretion by the lower court. Martinez v. Montana Power Co. (1989), 239 Mont. 281, 285, 779 P.2d 917, 920. Our review of the record reveals that although the issue of referring claimant to a pain clinic was not raised before trial, this issue was presented to the court during the initial trial. In his opening statement, claimant's counsel stated:

> The medical testimony is to be introduced later. The records we have now indicate she should be referred to a pain clinic. We are not exactly sure how the court would handle this, but our feeling right now is that she is probably still in a healing phase. She checked out of the Northern Montana Hospital to come here for this hearing today, she was in traction and, due to extreme pain, she was medicated. It has been since recommended that she be referred to a psychological pain clinic. As far as I can tell she is probably in some sort of a healing phase. If the court felt that she is probably more in a presently permanently-total condition, then we think that would be reasonable. We aren't here to ask for permanent-partial benefits or permanent-total benefits, because we are really concerned she get adequate medical care at this point, that the insurer be required to pay for this.

Moreover, claimant's attorney elicited the testimony from claimant's medical providers regarding the need for a pain clinic.

In its December 22, 1987 decision, the Workers's Compensation Court noted that the following occurred at the commencement of the trial:

15

At trial, a discussion ensued between the Court and counsel relative to the status of the exchange of medical information and after that discussion, the Court gave the claimant the alternative of proceeding with the understanding the claimant would be limited to the medical the claimant had in her possession on July 16, 1986, when her Petition was filed and any examination post-trial would be limited to that period, or the claimant could proceed on the basis she would waive any claim to attorney's fees or costs but would be able to take post-hearing depositions with the medical evidence the claimant had at the time of trial to be submitted to the Court through the deposition process. Claimant chose the latter course.

Although we recognize that the fixing of attorney's fees is within the lower court's discretion, from our review of the record we are unable to determine the reasons why the court subsequently granted claimant limited attorney's fees after previously noting that claimant had elected to waive any claim to attorney's fees and costs.

Because this Court is unable to determine whether or not the Workers' Compensation Court abused its discretion in fixing claimant's award of attorney's fees, we remand this issue to the Workers' Compensation Court. The Workers' Compensation Court is instructed to conduct such further proceedings as are necessary and again consider the amount of attorney's fees claimant is entitled to, if any, taking into consideration its findings and conclusions on remand regarding claimant's back temporary total disability benefits, claimant's permanent partial disability benefits, claimant's attendance at the pain clinic and the possibility of claimant's waiver of any claim to attorney's fees and costs.

Claimant further asserts she is entitled to a 20% penalty under § 39-71-2907, MCA (1979), arguing there was no legitimate

16

dispute between the parties such that the insurer was justified in rejecting her claim after paying less than one month of benefits in 1981. We disagree. Our review of the record finds no evidence to show that it was unreasonable for the insurer to deny benefits under the circumstances of this case. This is especially true given the Workers' Compensation Court's inability to come to a conclusion as to disability and benefits after the initial hearing. We hold that the Workers' Compensation Court properly denied claimant a 20% increase in her award.

Cross-Appeal

On cross-appeal the insurer argues claimant was not entitled to a new trial because claimant neither requested a new trial nor did she have grounds for one pursuant to §§ 25-11-103 and 25-11-102(1), (3) and (4), MCA, which set forth the bases for which a court sitting without a jury may grant a new trial.

The record demonstrates that it was the insurer, not the claimant, who filed a petition for "Rehearing or Modification of Findings of Fact and Conclusions of Law and Judgment." In its petition the insurer argued that the decision of the Workers' Compensation Court was in error and that the insurer was entitled to a rehearing or an amendment of the decision. In granting the petition and ordering a rehearing, the Workers' Compensation Court noted claimant had not responded to the petition and had not complied with the court's order to begin evaluation at a pain clinic. The court found it had no alternative but to grant the

17

insurer's motion since claimant's failure to respond to the petition and to move the case forward lead to the conclusion that the insurer's petition had merit.

The insurer, having filed the petition for rehearing in the first place, is in no position to argue the court erred in granting its motion. We hold the Workers' Compensation Court did not err in ordering a rehearing.

Affirmed in part and remanded in part with instructions.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

18