JUSTICE SHEEHY,
dissenting:
In Thomas v. Whiteside (1966), 148 Mont. 394, 399-400, 421 P.2d 449, 452, this Court affirmed the propriety of giving to the jury the long form verdict instruction from the then extant “Montana Jury Instruction Guide.” That instruction read as follows:
“The law forbids you to determine any issue of this case by resort to chance. You will understand this principle of law better, perhaps, if I give you an illustration; suppose that you jurors, or at least eight of you, agree that the plaintiff in this case is entitled to recover damages and you then each set down an amount which each juror thinks plaintiff should be awarded and that you further agree that the average so found will be the amount of your verdict. Such a method would be resorting to chance and if you do this I would have to set your verdict aside as being unlawful.
“The error of this method of arriving at a verdict is in your agreeing in advance to use the average figure as your verdict. In this connection, however, you are advised that it is not error or unlawful for you to each set down a figure and find the average as a basis for further discussion of what your ultimate verdict might or will be so long as you do not agree in advance to be bound by that average figure. Also, you are advised that if you should follow a procedure along the lines just mentioned it is not necessary that all twelve of your number join in working out some basis for discussion as any eight of you may agree upon a verdict in this case.”
In approving the giving of the foregoing instruction, this Court explained its decision:
“This long form of instruction appears to be a correct statement of the rule covering quotient verdicts as developed by the opinions in this Court. Section 93-5603(2) R.C.M. 1947, provides that a new trial *481 may be granted upon a showing that a finding was made ‘by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.’ This provision was interpreted in Great Northern Ry. Co. v. Benjamin, 51 Mont. 167, 172, 149 P.2d 968, 969, where it was said: ‘It is only when the jurors agree in advance that the quotient thus obtained shall constitute the amount of the verdict, and such agreement is carried into effect, that the proceeding constitutes a resort to the determination of chance and is condemned by the statute above.’ This rule has been reaffirmed in [citing cases]. See also Annotation in 8 A.L.R.3d 335”. (Emphasis added.)
Thomas, 421 P.2d at 452.
Under the foregoing discussion by this Court, there are two elements necessary to create an invalid quotient verdict: (1) the jurors must agree in advance that the result of the quotient shall be their verdict and (2) they must carry the agreement into effect.
In this case there is an absolute lack of evidence that the jurors agreed in advance to be bound by the result of the quotient and an absolute lack of evidence that they carried such agreement into effect. Because thereof, the District Court, in setting aside the jury verdict and granting a new trial because of the purported quotient committed a manifest abuse of its discretion.
In order for the reader to perceive this, and in fairness, it is necessary to set out in totidem verbis what the jurors related respecting the manner in which they arrived at the verdict.
Taking the foreperson, Maxine E. Kline, first:
“We had a lengthy discussion, and came to an agreement to put a bid in and divide it by 12. Then we had more discussion and would come to an agreement. We went through all four categories like this, medical, lost wages, economics and emotional distress. When all four categories were finished, it totaled a little over a million dollars, and it was discussed and agreed on that we would change it to a million. We all 12 voted on paper, with results of eight yes and four no, so we took that amount and were satisfied with it.”
Juror J. Philip Yanchisin:
“After determining liability, all 12 jurors wrote a total amount of damages which they wanted to award to Mr. Stanhope for actual damages. Each juror wrote an amount of damages on a piece of paper. The 12 amounts were totaled and divided by 12. The total amount divided by 12 was approximately $880,000. Then there was *482 a discussion about this amount. Several jurors objected to this amount because they felt it was not enough damages.
“After more discussion, one juror recommended $1,000,000 in damages. We all considered that amount. Several jurors reduced the amount they wanted to award and several jurors raised the amount they wanted to award. All 12 jurors then voted on the proposed amount, and 8 jurors voted yes, and 4 jurors voted no.”
Juror Randall Martinson:
“On voting on the damages being a no voter, voted in all actual damages — I voted on the system used to get the total, and voting on the results of total. Everybody writing a damage amount on a piece of paper then adding all damage amounts together and dividing them by 12. This amount came through by 4 votes on 4 different categories. This number was approximately $833,000. Some jurors didn’t agree with some of the damage prices. Another vote was taken to change to a higher amount. A discussion was held for a higher amount. All votes were agreed upon for $1,000,000 — all 12 jurors voted on this amount with 8 for and 4 against this amount. Juror Nancy Scharnowske:
“Because we were so greatly separated on our ideas of settlement money, we decided for each person to put in the amount they felt was just. We talked at great lengths about the spread and amounts. To come to a definite amount we decided to add the amounts up and divide by 12. We argued further and finally admitted the amount to $1,000,000 settlement.”
Juror Chester B. Scribner:
“We had a general discussion of amounts and couldn’t reach a number. To get things started we all wrote down a number and averaged them. The amount was about $880,000. We then had more discussion because some thought it was too high and some thought it was too low. After that we argued and finally we voted on a $1,000,000 amount. Everyone voted. After that we talked about breaking it down and we had a separate vote on each category. Everyone voted on each category and all the votes were 8 to 4.”
Juror Janice M. Krueger:
“To help reach a consensus on the amount of damages to award to Mr. Stanhope, each member of the jury wrote an amount on a piece of paper. These amounts were totaled and divided by 12.
“This total amount was discussed. As a result of those discussions, the amount was then changed to One Million Dollars. This amount was voted on by each juror, either yes or no. Eight jurors voted yes *483 and four jurors voted no. This process was done for each category of damages.”
Juror Ellen K. Sandberg:
“For the actual damages the jury finally decided all 12 individuals should write down the amount he/she believed Mr. Stanhope should receive. We then tallied up a total dollar amount and divided this by 12 to obtain the average. After discussion and agreement by all, the average was adjusted to one million dollars.”
Juror Jean H. Bushman:
“On determining the amount of damages, all 12 voted on a dollar amount. We then added them up and divided by 12. We had discussion on this number and took a final vote. We used the same process for each category after the division we discussed this thoroughly and finally agreed upon an amended amount.”
Juror Alice Marie Allen:
“We discussed what damage Stanhope was entitled to. We all entered a figure and we discussed the amount and divided by 12. We talked and voted on every question.”
Juror Myrtle P. Arnold:
“The jury had many discussions concerning the damages to be awarded to Mr. Stanhope, and used an average method to arrive at a working figure from which an amount of damages could be discussed.
“We used this method for each of the four categories of damages, and there was discussion after each process. The total amount of the award was also discussed, and we decided on a total damage award of One Million Dollars after those discussions.
“Each juror voted on the final amount of each item of damages, with the result being eight in favor of the amounts and four against the amounts on each category, as well as the grand total of One Million Dollars.”
Juror Mary Parrish was unwilling to submit an affidavit. She was interviewed by counsel for the plaintiff, Stephen M. Barrett, who supplied an affidavit in her place, concerning their interview. Although no one disputes the veracity of Stephen M. Barrett’s affidavit, I will not include it here, because it is not directly an affidavit of a juror. The general tenor of the affidavit, however, is in accord with the other jurors.
There were three different affidavits from Juror Clarice Hert. In the first affidavit on September 9, 1988, she stated:
“Every juror wrote out the amount of damages for each category *484 separately and one person read them out loud. The numbers were totaled and put on a board and then divided by 12.
“For each category, after the number was averaged, all 12 jurors voted on the total amount awarded to each category.
“The jurors went through this process four separate times.
“After discussion all 12 jurors then voted on the grand total of One Million Dollars. I always had the option to vote and did vote on each decision.”
The affidavit of Clarice Hert dated September 23, 1988, obtained by a representative of one of the counsel for one of the defendants, stated:
“I take this opportunity to provide a complete and full explanation of the workings of the jury in the Stanhope verdict.
“That as a member of the jury, I was present during the deliberations. That there was a disparity of agreement between all of the jurors as to each and every category with respect to the issues of damages in Question #3. None of the jurors could agree upon the amount of damages. As a result of this disagreement among the jurors, it was decided and agreed that everyone would write down on a piece of paper what they thought should be awarded in each and every category and those figures would be totaled and divided by 12 and rounded off to the nearest $100,000 or $1,000. It was my understanding that this figure, that would be rounded off, would be the figure that would be put down on the verdict slip and no one could or would dissent to this process. For instance, if I would have been one of the eight people and under the first category of the past and future medical expenses I wanted to award $400,000 and after the numbers were tabulated and divided by 12, it came out to be $200,000, I did not have the opportunity or right to dissent and say that, no, I wanted $400,000. Everyone had agreed in advance to live with the figure that was averaged out by the total divided by 12 with no dissents. This agreement was made before the figure was ever even divided out. After each category had been gone through and rounded off and adjusted to add up to $1,000,000 the total figure was voted on by all of the jurors and the jurors agreed 8 to 4 that total $1,000,000 figure.”
On November 10,1988, Clarice Hert gave a handwritten statement “clarifying” her earlier affidavits:
I have read the Judge’s Order of November 2, 1988, and wish to clarify my previous affidavits.
“I would like to clarify the sentence that did not have opportunity *485 or right to dissent and say no, I did have that right. I did vote no on each category as three others. We all agreed on the change in all of the figures on each category. Each time there was a total we voted on it. I voted zero or no. I was not bound by the number agreed on. This was written up when I spoke to John Lindsey. Then he put it all down on tape. When I read the written statement I must have missed the (not) in the sentence. I did have the opportunity to dissent. This process took several hours until we finally came up with the way of reaching a figure to start from. Each number was discussed and voted on time and time again until we came up with this way of reaching a figure. Everyone wrote a figure down. We added up and divided by twelve. We discussed it and decided to make it an even $1,000,000. We all voted and it'was agreed on. This was not a total we came up with. We all decided to make it an even $1,000,000.”
In deciding to grant a new trial, the District Court relied upon the September 23, 1988 affidavit of Clarice Hert, and the affidavits of Scharnowske, Krueger, Sandberg and Kline. Based on these and other affidavits, the court found that the jurors had “agreed in advance to be bound by a quotient verdict.” There is absolutely nothing in the affidavits which would warrant the conclusion of fact that the jurors had agreed in advance to be bound. The conclusion of fact is clearly erroneous. On that point alone, without more, the District Court erred, and this Court compounds the error by disregarding the manifest abuse of discretion by the District Court and by clinging instead to the argument that the District Court’s findings are not clearly erroneous.
The District Court made a further pertinent finding that has no basis of fact:
“The court finds that the additional damages were not the result of further evaluation and discussion based on the evidence, but rather on an arbitrary adjustment to the quotient . . . .”
Again, the affidavits reveal nothing on which that finding can be based. Rather the opposite is true from the tenor of the affidavits.
I therefore dissent from the majority opinion. I would reverse the order of the District Court granting a new trial, and proceed to a determination of the other issues which should have been decided in this appeal.
JUSTICE HUNT joins in the dissent of JUSTICE SHEEHY.